UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN EDELMAN, Plaintiff | ) | CIV. NO. 3:00CV1166 DJS |
| | ) | |
| VS. | ) | |
| | ) | |
| DAVID PAGE, ET AL., Defendants | ) | JULY 28, 2008 |

## FED.R.CIV.P. 60(b)(6) MOTION / D.CONN.L.CIV.R. 7(c)(1) MOTION FOR RECONSIDERATION

### RECENT HISTORY

Edelman appealed Edelman v. Page on December 14, 2004.  On July 27, 2005, the Second Circuit dismissed Edelman v. Page for failure to prosecute the case.  On February 1, 2007, a Three Judge Panel of the Second Circuit ordered Edelman v. Page reinstated to prevent "manifest injustice".  On May 21, 2008, the Second Circuit granted a May 9, 2008 *Motion for Summary Reversal* pursuant to the request of the Defendants that Edelman v. Page

> "be returned to the District Court to proceed upon the merits of the matter.  The agreement among all counsel to have it returned to the District Court is based in part upon the arguments of the plaintiff."

*See* Exhibit 1.  Subsequent to the remand *Order*, the Defendants said that they will continue to honor their commitment to try Edelman v. Page on its merits.  They therefore do not oppose this *Motion*.

The compelling arguments that both the Second Circuit and the Defendants found so persuasive follow.  Based upon these arguments, as well as the sentiment of all parties to this case, Edelman therefore moves for the Court to schedule Edelman v. Page for trial on its merits.

BACKGROUND

Plaintiff Steven Edelman filed Edelman v. Page pro se on June 22, 2000.  At the time of filing Edelman v. Page, Edelman had already prevailed on all but one of the charges brought in the underlying concurrent prosecutions of State v. Edelman, CR 980102014 and State v. Edelman, CR 980101973.  Only the sole remaining CGS § 29-263, permit to construct or alter count from State v. Edelman, CR 980102014 still awaited resolution.  On July 24, 2001, the Connecticut Appellate Court remanded State v. Edelman, 64 Conn.App. 480 (2001) for new trial.  On February 18, 2003, the Connecticut Supreme Court left the remand intact in State v. Edelman, 262 Conn. 392.  Favorable termination on the CGS § 29-263 charge occurred on August 24, 2003 (Ex. 2[1]).

On July 13, 2001, Edelman filed an unopposed Edelman v. Page Motion to Stay Proceedings.  The Court denied the Motion to Stay Proceedings on August 7, 2000.  On February 13, 2001, the Court issued an Order stating that

> "the Court will dismiss this case without prejudice to being reopened either on or before September 30, 2001, or thirty (30) days after the resolution the [sic] plaintiff's appeal of his criminal conviction, **whichever occurs first.**  After September 30, 2001, this dismissal shall be **with prejudice.**" (emphasis added).

On May 25, 2001, the Court duplicated the February 13, 2001 Order and ordered the case closed.  Edelman filed a Motion to Reopen on

---

[1]        "Ex." hereinafter means "Exhibit".

2

August 21, 2001.  On August 27, 2001, the Court denied without prejudice the *Motion to Reopen*, stating that

> "the plaintiff's appeal of the underlying state matter has not yet been fully resolved so the terms of the original [February 13, 2001] order are still applicable."

Because State v. Edelman did not end by September 30, 2001 as required by the February 13, 2001, May 25, 2001, and August 27, 2001 *Orders*, Edelman v. Page became dismissed with prejudice on October 1, 2001.  No party to Edelman v. Page ever entered a Fed.R.Civ.P. 58 *judgment.*

On August 21, 2001, Edelman retained Attorney Paul Ngobeni for Edelman v. Page representation (Ex. 3).  Attorney Ngobeni nevertheless did not file an *appearance* until April 5, 2004.  On that same day, Attorney Ngobeni filed a *Motion to Reopen* that the Court denied on August 4, 2004.  Attorney Ngobeni then filed an August 20, 2004 *Motion to Reconsider* that the Court denied on November 16, 2004.  Following a December 14, 2004 *Notice of Appeal*, the Second Circuit dismissed Edelman v. Page on July 7, 2005 for failure to submit a *brief*.  The Second Circuit re-opened Edelman v. Page on February 2, 2007.  On May 21, 2008, the Second Circuit vacated the November 16, 2004 *Motion to Reconsider* denial and remanded the case for further proceedings[2].

Attorney Ngobeni repeatedly assured Edelman from the very

---

[2]     The parties to the case did not learn about the decision until June 19, 2008.  *See* Exhibit 4.  A July 16, 2008 *Mandate* arrived on July 21, 2008.

beginning of his retention as legal counsel that Edelman v. Page remained viable and under control. After Edelman saw Attorney Ngobeni on January 6, 2003, Attorney Ngobeni disappeared. After assiduous effort, Edelman tracked down Attorney Ngobeni on March 18, 2004 at an East Hartford residence. Exhibiting not the least bit of discomfiture, Attorney Ngobeni persevered with his brazen deceptions while incompetently moving to have Edelman v. Page re-opened. On February 8, 2005, Edelman became aware that Edelman v. Page faced appellate dismissal because Attorney Ngobeni failed to file Forms C and D. When Attorney Ngobeni had the dismissal vacated, he excoriated Edelman for lacking faith and trust. Thus reproached, Edelman believed Attorney Ngobeni when informed on April 23, 2005 that filing of the Edelman v. Page appellate brief had already occurred. This assertion, as Edelman subsequently discovered, was a lie. *See* Exhibit 5.

Attorney Ngobeni similarly betrayed and abandoned over twenty other clients (Ex. 6d). On December 19, 2005, the Superior Court suspended Attorney Ngobeni from practicing law (Ex. 6a). The Superior Court disbarred Attorney Ngobeni for thirteen years on October 17, 2007 (Ex. 6e). Attorney Ngobeni resigned from the bar on November 28, 2007, surrendering any right to re-apply (Ex. 6f). Attorney Ngobeni currently faces prosecution in Geographical Area 11 for larceny and forgery (Ex. 6g).

## JURISDICTION

Referring to Fed.R.Civ.P. 60(b)(6), <u>Pichardo v. Ashcroft</u>, 374 F.3d 46,56 (2d Cir. 2004)[3] states that

> "'it is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship[.]' Id.; see also Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245,1255 (2d Cir. 1992) (courts may reconsider an earlier opinion if there has been an 'intervening change of controlling law ... new evidence [has become available], or [there is a] need to correct a clear error or prevent manifest injustice')."

<u>Edelman v. Page</u> involves almost all of these unusual conditions.

In addition, although D.Conn.L.Civ.R. 7(c)(1) states that "[m]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought",

> "the district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked ... The district court should ask whether the application of the letter of Local Rules to a particular case would cause an unjust result." <u>Somlyo v. Lu-Rob Enterprises</u>, 932 F.2d 1043,1048-49 (1991).

Moreover, in <u>Minette v. Time Warner</u>, 997 F.2d 1023,1025 (2d Cir. 1993), which also involved district court application of a discretionary Local Rule, the Second Circuit held that

> "In those matters near the border of dismissal for one or another deficiency, however, courts must be careful, especially in civil rights cases, not to dismiss a case too

---

[3]    A case involving "incompetent lawyering" and district court "abuse of discretion" in ignoring critical law.

hastily on procedural grounds.  Although a case should win only on its merits, it should not be lost on account of an ostensible procedural bar.  Plaintiff is entitled to her day in court."

The Court denied Attorney Ngobeni's April 5, 2004 *Motion to Re-open* on August 4, 2004.  Even though twelve Fed.R.Civ.P. 6(a) days elapsed before Attorney Ngobeni filed a *Motion to Reconsider* on August 20, 2004, the unjust result of depriving Edelman of his day in court by strictly applying D.Conn.L.Civ.R. 7(c)(1)'s ten day time limit provides ample reason for overlooking a two day lateness.

## THE DEADLINE ORDERS WERE CLEARLY ERRONEOUS

The Court exceeded its authority by ordering Edelman on February 13, 2001, May 25, 2001, and August 27, 2001 to either have the prosecution of State v. Edelman wrapped up by September 30, 2001 or suffer dismissal with prejudice.  The Court could not reasonably expect that Edelman had any means to compel State of Connecticut courts to proceed in accordance with such a United States district court timetable.  Neither could the Court reasonably deny to Edelman the three year limitations period that CGS § 52-577 would make available for filing a civil rights lawsuit if Edelman prevailed in the underlying CGS § 29-263 criminal proceeding.

Heck v. Humphrey, 512 U.S. 477 (1994) prevents a plaintiff from litigating claims that would demonstrate the invalidity of a criminal conviction.  Conversely, Heck doctrine does not prevent a plaintiff from bringing causes of action that would not demonstrate the invalidity of a criminal conviction.  In addition, Heck assumes particular importance where, as in Page v. Edelman, a plaintiff faces an imminent time bar.

The success of most of Edelman's claims did not depend upon invalidation of the CGS § 29-263, *permit to construct or alter* criminal conviction.  Certainly, the malicious prosecution claim for this last outstanding criminal charge underlying Edelman v. Page could not accrue until after conviction invalidation.  However, Edelman's other claims, including malicious prosecution

relating to the CGS § 53a-116 and CGS § 29-254a charges, as well as those sounding in false arrest, due process deprivation, equal protection violation, unlawful search and seizure, selective prosecution, and trespass, stand on their own merits and do not imply the invalidity of any underlying criminal conviction or proceeding.

When a plaintiff's action, "even if successful, will *not* demonstrate the invalidity of an outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Ibid, 487. However, claims not directly dependent upon the validity of a conviction, may still have a close tie to the facts surrounding a criminal case. "In Heck v. Humphrey, the Supreme Court raised, but did not answer, the question of whether the federal court might wisely abstain from adjudicating a civil claim that neither depends on nor necessarily results in invalidation of, but could have an impact on, the conviction." Jackson v. Suffolk County Homicide Bureau, 135 F.3d 254, 257 (2d Cir. 1998).

The Jackson court proceeded to answer the unresolved Heck question by delineating a procedure that would enable a court to preserve a plaintiff's due process rights in such a situation. "[T]he proper course is for the district court to stay further proceedings on that claim pending termination of the state court criminal proceedings, rather than dismiss it." Ibid. The Court therefore did not have the authority to set an arbitrary date,

completely out of Edelman's control, to dismiss "with prejudice" Edelman claims that would not have invalidated the CGS § 29-263 conviction.

With respect to a pending civil rights claim that would imply the invalidity of a state court criminal proceeding (the unresolved CGS § 29-263 charge, for example), Amaker v. Weiner, 179 F.3d 48,52 (2d Cir. 1999) held that

> "Disposition of the case on Heck grounds, however, warrants only dismissal **without prejudice**, because the suit may be reinstated should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" (emphasis added).

Ibid, citing Heck, 512 U.S. at 487. By dismissing without prejudice, a court accommodates the possibility that an overturned criminal conviction might convert a formerly unviable civil rights claim into a viable one. Ibid, 51.

Consequently, the Court clearly erred by dismissing all of Edelman's claims "with prejudice" simply because the underlying criminal proceeding on which a few of them depended had not yet completed their course in criminal court. Under unambiguous Second Circuit principles, the Court should have stayed or tried all Edelman claims not dependent upon the validity of the underlying CGS § 29-263 criminal prosecution and dismissed "without prejudice" the unaccrued CGS § 29-263 claims.

On July 13, 2001, Edelman filed a *Motion to Stay*

*Proceedings*. Edelman had already prevailed on the CGS § 29-254a and CGS § 53a-116 charges; only the CGS § 29-263 charge remained outstanding. Even though specifically prompted to stay the case, the Court instead abused its discretion by unfairly and erroneously setting an arbitrary and unreasonable deadline that held every already accrued claim hostage to the vagaries of the Connecticut criminal justice system.

The deadline *Orders* present a startling paradox. If Edelman had not filed Edelman v. Page on June 22, 2000, he would have had from August 24, 2003 until August 23, 2006 to bring a 42 USC § 1983 / malicious prosecution lawsuit on the CGS § 29-263 charge. Of course, Edelman would have had to sacrifice every other Edelman v. Page claim, because by August 24, 2003 they would all have become time barred. On the other hand, the Edelman v. Page lawsuit brought before the conclusion of the CGS § 29-263 criminal proceedings had the effect of forever foreclosing Edelman from availing himself of any civil remedy whatsoever.

The pro se Plaintiff Edelman should never have been placed in such an impossible predicament, consistent with neither fairness nor legal precedent. Edelman's filings make apparent that he recognized the Heck v. Humphrey principles obligatory on the Court even as a pro se[4]. Edelman properly submitted filings

---

[4]    A July 18, 2001 *Motion to Stay Proceedings* from companion case Edelman v. Braxton 3:01CV1087 (Ex. 7) states that "[t]he Plaintiff filed Edelman v. Page and Edelman v. Braxton prior to the resolution of State v. Edelman to preclude the occurrence of a time bar. Heck v. Humphrey, 512 US 477 (1994)."

such as a July 13, 2000 *Motion to Stay Proceedings* and an August 21, 2001 *Motion to Reopen*, only to have them quickly and summarily rejected by the Court.

Totally devoid of means by which to control the speed of the criminal docket, Edelman could not possibly meet the Court's looming deadline.  All of Edelman's claims therefore suffered "with prejudice" dismissal when the deadline passed.  Because the Court had no legal or equitable basis with which to dismiss Edelman's civil claims "with prejudice" in such a capricious manner, the Court should vacate its August 4, 2004 denial of the April 5, 2004 *Motion to Reopen* as clearly erroneous and restore Edelman v. Page to the docket.

### IMPLEMENTATION OF THE DEADLINE ORDERS WAS CLEARLY ERRONEOUS

The August 4, 2004 <u>Order</u> denying an April 5, 2004 *Motion to Reopen* states that

> "[p]ursuant to this court's order dated May 25, 2001, the plaintiff had a window of time in which a motion to reopen his case could be filed.  That window closed, at the very latest, on November 24, 2003."

However, the May 25, 2001 *Order*, initially issued on February 13, 2001 and iterated on August 27, 2001, actually states that

> "the Court hereby dismisses this case **without prejudice** to being reopened either on or before **September 30, 2001**, or thirty (30) days after the resolution the [sic] plaintiff's appeal of his criminal conviction, whichever occurs first. **After September 30, 2001**, this dismissal shall be **with prejudice**." (emphasis in original).

The February 13, 2001, May 25, 2001, and August 27, 2001 *Orders* all called for the dismissal with prejudice of <u>Edelman v. Page</u> ***after*** September 30, 2001.  The *Orders* all said that Edelman's underlying criminal appeal needed to conclude by that date.  Effective October 1, 2001, <u>Edelman v. Page</u> became dismissed with prejudice.  Because September 30, 2001 constituted a final deadline for Edelman, the Court's August 4, 2004 assertion to the contrary was clearly erroneous.

The August 4, 2004 *Order* also states that "the plaintiff offers no grounds that might serve as a basis for relief from the prior order dismissing the case with prejudice."  By the time of the April 5, 2005 *Motion to Reopen* filing, Attorney Ngobeni had

already constructively, if not actually, abandoned Edelman.  Only by tracking down Attorney Ngobeni and confronting Attorney Ngobeni with his malfeasance did Edelman induce Attorney Ngobeni to file anything at all.  Although inarguably severely deficient, Attorney Ngobeni's *Motion to Reopen* nevertheless still included the request that "this Court vacate its previous orders issued while the state court proceedings were pending."  Thus, although barely there, the April 5, 2005 *Motion to Reopen* did, in fact, offer a basis for relief from the *Orders* dismissing Edelman v. Page with prejudice.

## NGOBENI ABANDONMENT CONSTITUTES EXTRAORDINARY CIRCUMSTANCES

To say that Attorney Ngobeni exhibited inexcusable neglect in his handling of Edelman v. Page does not scratch the surface in describing Attorney Ngobeni's egregious misconduct. Attorney Ngobeni engaged in not just poor lawyering, but in gross negligence involving a shocking amalgam of deception and ineptitude. Blaming Edelman for his attorney's failings would only further degrade an already unfortunate situation. The "extraordinary circumstances" of Attorney Ngobeni's malpractice and betrayal provide more than sufficient cause under Rule 60(b)(6) for reopening Edelman v. Page for trial on its merits.

Fed.R.Civ.P. 60(b)(6) allows the Court to relieve a party from judgment for "any other reason justifying relief from the operation of the judgment." The Second Circuit has granted Fed.R.Civ.P. 60(b)(6) relief in situations involving "undue hardship" or "extraordinary circumstances". Harris v. United States, 367 F.3d 74,81 (2d Cir. 2004).

> "To be 'extraordinary circumstances' for purposes of Rule 60(b)(6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance, see Vindigni v. Meyer, 441 F.2d 376 (2d Cir. 1971), or constructive disappearance, see United States v. Cirami, 563 F.2d 26,34-35 (2d Cir. 1977)."

Ibid.

In Vindigni, the plaintiff's attorney ceased attending to his practice and disappeared. Vindigni, 441 F.2d at 377. Because

14

the plaintiff had nobody monitoring his case, dismissal resulted when the plaintiff failed to answer interrogatories or respond to deposition requests. Ibid.  Although the plaintiff waited eighteen months before directly inquiring about his lawsuit, he had "diligently" attempted to find his attorney to discuss his case. Ibid.  These extraordinary circumstances led the Second Circuit to overrule the district court's denial of the plaintiff's Fed.R.Civ.P. 60(b)(6) *motion*.

The Second Circuit's <u>Cirami</u> decision expanded <u>Vindigni</u> physical disappearance logic to "constructive disappearance". <u>Cirami</u>, 563 F.2d at 34.  In <u>Cirami</u>, attorney neglect allowed judgment to enter without opposition. Ibid, 29.  Cirami's attorney suffered from a mental disorder "which manifested itself in his failure to complete work promised to his clients." Ibid, 31.  The Second Circuit reversed the district court and concluded that the psychiatric difficulties of Cirami's attorney warranted relief under Fed.R.Civ.P. 60(b)(6). Ibid, 32.  Although Cirami's attorney maintained a physical presence at his practice, his condition amounted to "constructive disappearance" from Cirami's case. Ibid, 34.

Resemblance to <u>Edelman v. Page</u> makes <u>Community Dental Service v. Tani</u>, 282 F.3d 1164 (9th Cir. 2002) an instructive case.  Both cases involve situations in which clients found themselves victimized by counsel who masked fraud and abandonment with reports of favorable case progress.  The 9th Circuit held:

15

"We join the Third, Sixth, and Federal Circuits in holding
that where the client has demonstrated gross negligence on
the part of his counsel, a default judgment against the
client may be set aside."

Ibid, 1168.

Numerous facts show that Attorney Ngobeni acted with
reckless disregard for Edelman's interests. Despite having
received a $7500.00 retainer from Edelman on August 21, 2001 to
represent Edelman in Edelman v. Page, Attorney Ngobeni
immediately commenced an abandonment of Edelman. Although aware
that Edelman v. Page needed urgent attention to address an
impending September 30, 2001 dismissal with prejudice deadline,
Attorney Ngobeni did not do so much as file an *appearance*. In
retrospect, Attorney Ngobeni's resultant failure to monitor any
aspect of Edelman v. Page therefore hardly seems surprising.

Attorney Ngobeni hardly ever returned any of Edelman's many
telephone answering machine messages and personally answered the
telephone only once. He rarely responded to e-mails. Edelman
elicited no better luck with written messages left at Attorney
Ngobeni's office and home. When Edelman actually managed to make
an appointment, Attorney Ngobeni usually missed them. *See*
Exhibit 5.

Despite Attorney Ngobeni's lack of availability, he
nevertheless succeeded in convincing Edelman when they actually
did meet that Edelman v. Page remained under control and that
prospects for the case continued to look good. Edelman
attributed Attorney Ngobeni's odd behavior to the demands of a

16

solo practice but endured it because he knew other Attorney Ngobeni clients with similar communication problems who expressed satisfaction with the legal services that Attorney Ngobeni ultimately rendered them and because Attorney Ngobeni practiced his guile with such persuasiveness. *See* Exhibit 5.  The satisfied Attorney Ngobeni clients eventually discovered that Attorney Ngobeni had duped them as well.

After prevailing in the CGS § 29-263 prosecution, Edelman made numerous attempts to contact Attorney Ngobeni.  When these attempts did not succeed, Edelman examined the District Court files for himself in early March, 2004.  Only then did Edelman discover that the Court had dismissed Edelman v. Page "with prejudice" and that Attorney Ngobeni had not even filed an *appearance* in the case.  A mortified Edelman embarked upon a search that finally succeeded on March 18, 2004 in uncovering Attorney Ngobeni's whereabouts.  *See* Exhibit 5.  Utterly unfazed by Edelman's sudden appearance, Attorney Ngobeni once again drew upon his amazing improvisational skills to explain away the unexplainable.  Mollified, Edelman once again entrusted Attorney Ngobeni with Edelman v. Page, a trust that Attorney Ngobeni would soon betray for the final time.

On December 19, 2005, the Hartford Superior Court suspended Attorney Ngobeni from practicing law in Connecticut (Ex. 6a).  He then left the area and reportedly set up a practice in a motel room in Lowell, Massachusetts (Ex. 6b).  In a March 13, 2006

17

*Affidavit*, the Connecticut Judicial Branch's Chief Disciplinary Counsel disclosed that Attorney Ngobeni had no malpractice insurance to compensate fourteen deceived and abandoned clients (Ex. 6c).  Four months later, the number of abandoned and deceived clients had risen to twenty, and Attorney Ngobeni was believed to have left the country (Ex. 6d).  Attorney Ngobeni was subsequently tracked down and arrested for fraudulent dealings with clients (Ex. 6g).

Attorney Ngobeni's unscrupulous and conniving conduct, refined by preying upon a multitude of clients, amounts to constructive and actual abandonment of Edelman.  Despite repeated promises and assurances, Attorney Ngobeni failed to work on critical aspects of Edelman v. Page.  Attorney Ngobeni ultimately physically abandoned his many clients, including Edelman, by disappearing to another state and then to Africa, where he now resides.

Such misconduct by Attorney Ngobeni strikingly combines elements found in both Vindigni and Cirami.  Attorney Ngobeni's duplicity is truly extraordinary, not just simple inattentiveness caused by a busy case load.  Attorney Ngobeni's malfeasance has severely crippled Edelman v. Page and may have mortally wounded Edelman v. Braxton.  Like the Vindigni and Cirami plaintiffs, Edelman has been deprived of the opportunity to have his civil rights claims heard on their merits.

Attorney Ngobeni's conduct went well beyond inexcusable

neglect, egregious misconduct, or gross negligence. He first constructively and then physically abandoned Edelman. Attorney Ngobeni's fraudulent representations and practiced deceptions comprise "extraordinary circumstances" that caused Edelman the "extreme hardship" of being deprived of the opportunity to have his case heard on its merits. Attorney Ngobeni's wildly irresponsible conduct therefore merits Fed.R.Civ.P. 60(b)(6) relief under any standard used.

## THE COURT SHOULD NOT PUNISH EDELMAN FOR NGOBENI DELAY

Edelman v. Page incurred a default dismissal because a single remaining CGS § 29-263 count of an underlying criminal prosecution against Edelman did not conclude before a September 30, 2001 deadline set by the Court.  When Edelman moved on April 5, 2004 to reopen Edelman v. Page after having prevailed in the underlying CGS § 29-263 criminal prosecution, the Court rebuffed Edelman by asserting a four month untimeliness in moving to reopen the case.  Although the Record at the time did not reveal that Edelman had legal counsel before April 5, 2004, the Court has since learned that Edelman actually entered into a contractual arrangement with Attorney Ngobeni long before, on August 21, 2001, for legal representation in Edelman v. Page.  In light of this new information, to reject adjudication of the merits of Edelman v. Page now would unfairly punish Edelman for Attorney Ngobeni's unconscionable failures in prosecuting the case.

> "This Court has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default ... We have stated time and again that a trial court's desire to move its calendar should not overcome its duty to do justice." (citations omitted).

Cody v. Mello, 59 F.3d 13,15 (2d Cir. 1995).

> "'We have long recognized that dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness ... [and] repeatedly noted that one of the factors that should inform a trial court's decision is the suitability of lesser sanctions.' Dodson v. Runyon, 86 F.3d 37,39 (2d Cir. 1996); Cerruti 1881 S.A. v. Cerruti, Inc., 169 F.R.D. 573,583 (S.D.N.Y. 1996).  See also Chira v.

20

> Lockheed Aircraft Corp., 634 F.2d 664,665 (2d. Cir. 1980
> ('The remedy [of dismissal for a failure to prosecute] is
> pungent, rarely used, and conclusive.  A district judge
> should employ it only when he is sure of the impotence of
> lesser sanctions.')" (footnote omitted).

Martens v. Thomann, 273 F.3d 159,179 (2d Cir. 2001).  Applying

this principle, Shangold v. The Walt Disney Company, 2006,

U.S.Dist. LEXIS 748 (S.D.N.Y. January 12, 2006) observed that

"[b]ecause dismissal sounds the death knell of the lawsuit,

district courts must reserve such strong medicine for instances

where the defaulting party's conduct is correspondingly

egregious."

Dismissal for failure to prosecute constitutes one of the

harshest sanctions at a trial court's disposal because it

extinguishes a plaintiff's cause of action and denies a plaintiff

his day in court.  As a result, a district court should reserve

its use for only the most extreme circumstances. United States ex

rel. Drake v. Norden Systems, 375 F.3d 248,251 (2d Cir. 2004).

Recognizing that dismissal for failure to prosecute is a

"harsh remedy to be utilized only in extreme situations" (see

Minette v. Time Warner, supra, 1027), the Second Circuit has

fashioned guiding rules that limit a trial court's discretion in

this context.  See Peart v. City of New York, 992 F.2d 458,461

(2d Cir. 1993).

> "In particular, we review the trial court's decision by
> examining whether: (1) the Appellant's failure to prosecute
> caused a delay of significant duration; (2) Appellant was
> given notice that further delay would result in dismissal;
> (3) defendant was likely to be prejudiced by further delay;

(4) the need to alleviate court calendar congestion was carefully balanced against Appellant's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.  *See, e.g.* Martens v. Thomann, 273 F.3d 159,180 (2d Cir. 2001); Shannon v. GE, 186 F.3d 186,193-94 (2d Cir. 1999)."

United States ex rel. Drake v. Norden Systems, supra, 254.

The Second Circuit has evaluated the Norden delay and prejudice factors within the following rubric:

"[W]e believe the district court abused its discretion in finding that the matter constituted such an extreme case [warranting dismissal].  In the controversy at hand only three months had transpired without action on Minette's part."

Minette v. Time Warner, supra, 1027;

"While ... [a] 17-month delay was inexcusably long, we do not agree that the circumstances were sufficiently egregious or that Drake's actions were so contumacious as to warrant dismissal of his entire complaint."

Norden, supra, 251;

"'Delay alone is not a sufficient basis for establishing prejudice.' Davis v. Musler, 713 F.2d 907,916 (2d Cir. 1983)."

Cody v. Mello, supra, 16.

Indeed, the real delay in Edelman v. Page originates with the State of Connecticut, which took over five years to prosecute Edelman.  However, the delay to which the August 4, 2004 denial of the April 5, 2004 *Motion to Reopen* took exception involved a four month lateness.  A few weeks or even months do not qualify as an inordinate duration of time warranting dismissal, even without the mitigating factor of Attorney Ngobeni's

22

disappearance.  The emotional and financial costs of delay have worked solely against Edelman's quest for justice.

With respect to the Norden lesser sanctions factor:

> "*See* Dodson v. Runyon, 86 F.3d 37,42 (2d Cir. 1996) ('Dismissal is a remedy that a district judge should generally impose only when his is sure of the impotence of lesser sanctions.')" (internal citations and quotation marks omitted).

Jacobs v. County of Westchester, 2005 U.S. App. LEXIS 19523 (2d Cir. 2005);

> "Drake effectively concedes that there was no excuse for his counsel's delay, but he emphasizes that it was nonetheless his counsel rather than he himself who was at fault.  This apportionment of blame between counsel and client, however, is best considered when we get to the fifth factor -- efficacy of lesser sanctions.  See Dodson v. Runyon, 86 F.3d 37,39 (2d Cir. 1996)."

Norden, supra, 255.

The *Record* does not reveal that the Court inquired about the cause for the four month delay or considered a lesser sanction than dismissal.  The evidence does not suggest that the Court adequately considered Edelman's right to his day in court, with the unfair result that the Court punished Edelman for Attorney Ngobeni's malpractice.  However, now aware of Attorney Ngobeni's abandonment of Edelman, the Court can correctly apportion blame by waiving the four month filing lateness cited in the August 4, 2004 denial of the April 5, 2004 *Motion to Reopen* should the Court not find the deadline decisions clearly erroneous.

CONCLUSION

The Court dismissed *Edelman v. Page* with prejudice because a single remaining CGS § 29-263 count of an underlying criminal prosecution against Edelman did not conclude by an arbitrary deadline. When Edelman moved to reopen *Edelman v. Page* after the criminal prosecution terminated in his favor, the Court rendered a clearly erroneous interpretation of an *order* that relied upon a clearly erroneous interpretation of law.

To make matters worse, Edelman's lawyer deceived him for several years, did a little sub-standard work to keep up appearances, and then went on the lam for good. Edelman was not uniquely gullible in this regard; he had plenty of company. Edelman's diligence just was simply no match for Attorney Ngobeni's expert con. Consequently, the Cody "duty to do justice" and the Pichardo obligation to "prevent manifest injustice" compel this court to correct its clearly erroneous decisions and to forgive inadequacies in the April 5, 2004 *Motion to Reopen* as derivative of Attorney Ngobeni's abandonment of Edelman.

WHEREFORE, Edelman respectfully submits this unopposed *Motion* requesting that the Court vacate its August 4, 2004 denial of the April 5, 2004 *Motion to Reopen* and schedule *Edelman v. Page* for trial on its merits.

24

Plaintiff, Steven Edelman

by David K. Jaffe
    Federal Bar No. ct04640
    Sally A. Roberts
    Federal Bar No. ct24828

Brown, Paindiris, and Scott, LLP
100 Pearl Street
Suite 1100
Hartford, Connecticut 06103
telephone: (860) 522-3343
facsimile: (860) 522-2490
email: djaffe@bpslaywers.com
email: sroberts@bpslawyers.com

Plaintiff, Steven Edelman

by Jeremy D. Booty
Federal Bar No. ct03461

Jeremy D. Booty, Attorney at Law
120 Broadway
Norwich, Connecticut 06360
telephone: (860) 889-8586
facsimile: (860) 889-8208
email: booty@snet.net