UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEVEN EDELMAN, Plaintiff | ) | CIV. NO. 3:00CV1166 DJS |
| | ) | |
| VS. | ) | |
| | ) | |
| DAVID PAGE, Individually and | ) | DECEMBER 26, 2008 |
| in his Official Capacity; | ) | |
| DONALD SCHULTZ, Individually and | ) | |
| in his Official Capacity; | ) | |
| WALTER PAWELKIEWICZ, Individually | ) | |
| and in his Official Capacity; | ) | |
| RICHARD CODY, Individually and in | ) | |
| his Official Capacity; | ) | |
| JASON WESTCOTT, Individually and | ) | |
| in his Official Capacity; | ) | |
| JOHN LESCOE, Individually and | ) | |
| in his Official Capacity; | ) | |
| MICHAEL PAULHUS, Individually and | ) | |
| in his Official Capacity; | ) | |
| Defendants. | ) | |

AMENDED COMPLAINT

CASE SUMMARY

Schultz and Pawelkiewicz hired Page to serve Edelman with
process intended to induce Edelman to stop replacing roof
shingles on about ten percent of a single family residence.
Because the process was facially invalid and because Edelman had
an established expectation of privacy, Edelman instructed Page to
leave the premises.  Page refused to depart.  Page subsequently
filed a criminal complaint accusing Edelman of CGS 53a-116
criminal mischief.  A jury acquitted Edelman of the charge.

The process purportedly served upon Edelman told Edelman to
obtain a building permit to avoid criminal prosecution.  Although
not legally obligated to obtain such a permit, Edelman promptly
obtained one anyway to avoid escalating the situation.  Schultz
nevertheless initiated a selective prosecution of Edelman under

CGS § 29-263, a civil advisory statute.  Schultz also initiated a selective prosecution of Edelman under CGS § 29-254a, a penalty statute applicable to a State Building Code that the State never accused Edelman of violating.  Despite ongoing administrative proceedings against Schultz and despite Schultz's absence of authority to even file a criminal complaint against Edelman, a trial ensued.  Schultz's trial testimony and underlying Arrest Warrant Affidavit contained numerous material misrepresentations and inconsistencies.  After Appellate Court and Supreme Court appeal, the charges against Edelman were unconditionally nolled and eventually dismissed.  Windham authorities ignored every Edelman attempt to have Schultz disciplined and properly trained.

PRELIMINARY STATEMENT

1)    Edelman files this action to redress the deprivation by the Defendants of rights secured to him by the laws of the United States and the State of Connecticut that resulted in his wrongful conviction and false imprisonment.  The Defendants joined and/or jointly abetted an unlawful conspiracy to

   a)    deprive Edelman of property and privacy rights;

   b)    arrest Edelman without probable cause;

   c)    selectively and maliciously prosecute Edelman despite an absence of jurisdiction;

   d)    enforce a State Building Code never lawfully enacted

while simultaneously ignoring provisions of this same regulatory scheme exonerating Edelman;

e)   manufacture a statutory basis for prosecuting Edelman in the absence of any Edelman failure to comply with a purported State Building Code;

f)   deny Edelman due process by pre-empting administrative remedy;

g)   conceal and/or misrepresent material exculpatory facts;

h)   tamper with sequestered witnesses.

Edelman suffered serious injury and damages as a proximate result of wholly unjustified arrest, criminal prosecution, and imprisonment instigated solely to exact political and personal revenge.

2)   The Defendants took punitive measures against Edelman to deny him

a)   First Amendment political association and petition rights;

b)   Fourth Amendment property and privacy rights;

c)   Fourteenth Amendment due process and equal protection rights;

d)   statutory rights; and

e)   Common Law rights.

Racial animus against Edelman also motivated the Defendants, who exhibited deliberate indifference to Edelman's civil rights.  The Defendants went beyond selectively prosecuting Edelman; Edelman has the unique status of being the only

person ever tried in the State of Connecticut for
purportedly violating either CGS § 29-263 or the State
Building Code.

JURISDICTION

3)   Edelman brings this action in accordance with 42 USC § 1981,
     42 USC § 1982, 42 USC § 1983, 42 USC § 1985, 42 USC § 1986,
     42 USC § 1988, CGS § 6-30 (1997), CGS 6-30a (1997), CGS §
     52-577, CGS § 52-597, and CGS § 54-86c.

4)   28 USC § 1331, 28 USC § 1343, 42 USC § 1981, 42 USC § 1982,
     42 USC § 1983, 42 USC § 1985, 42 USC § 1986, and 42 USC §
     1988 give this Court jurisdiction over Edelman's claims.

5)   28 USC § 1367 gives this Court supplemental jurisdiction
     over State of Connecticut law in accordance with the
     doctrine of pendent jurisdiction.

6)   28 USC § 2201 and 28 § USC 2202 authorize declaratory
     relief.

PARTIES

7)   Plaintiff Steven Edelman is a citizen of the United States
     of America and the State of Connecticut residing on and
     managing a farm property straddling both sides of Route
     Fourteen in Windham Center, Connecticut.  Edelman enjoyed a
     reputation unmarred by a criminal record.  Edelman is a
     Levite Jew descended from Asian Semites.

4

8)   Defendant Donald Schultz was at all times relevant to this action a Town of Windham Building Official.  Schultz acted under color of law and in the scope of his employment as an agent for the Town of Windham and the Town of Windham Building Department.

9)   Defendant David Page was at all times relevant to this action a Windham County Deputy Sheriff.  Page acted under color of law and in the scope of his employment as an independent contractor working as an agent for the Town of Windham and the Town of Windham Building Department.

10)   Defendant Walter Pawelkiewicz was a Windham First Selectman at all times relevant to this complaint through 1999.  Pawelkiewicz acted under color of law and in the scope of his employment as an agent for the Town of Windham.

11)   Defendant Richard Cody was a Town of Windham lawyer at all times relevant to this complaint.  Cody acted under color of law and in the scope of his employment as an agent for the Town of Windham.

12)   Defendant Jason Westcott worked as a lawyer in Defendant Cody's law firm at all times relevant to this Complaint.  Westcott acted under color of law and in the scope of his employment as an agent for the Town of Windham.

13)   Defendant John Lescoe was a Windham First Selectman at all times relevant to this Complaint from 1999 to 2001.  Lescoe acted under color of law and in the scope of his employment

as an agent for the Town of Windham.

14) Defendant Michael Paulhus was a Windham First Selectman at all times relevant to this Complaint since 2001. Paulhus acted under color of law and in the scope of his employment as an agent for the Town of Windham.

FACTS

15) Pawelkiewicz, Lescoe, Paulhus, and Page belong to the Town Committee of the principal political party in Windham.

16) Edelman chairs a political party that has criticized how Windham's principal political party administers the Town of Windham and has advocated dissolution of municipal offices and positions, including the municipal Building Official office and position.

17) Edelman has run for municipal and state public office, garnering significant numbers of votes.

18) The Town of Windham commenced a pattern of selectively harassing Edelman in 1991.

19) A significant percentage of the legal disputes resolved in Edelman's favor.

20) Edelman's political associates have also met with success in legal actions undertaken against the Town of Windham.

21) Many of Edelman's legal actions and those of his political associates concern Schultz, Pawelkiewicz, and Cody.

21) The Windham Defendants have disparaged Edelman for years.

22) Nearly every Town of Windham matter involving Edelman has elicited consultation with Cody, a unique status not accorded to any other Windham resident.

23) Edelman noticed the Town of Windham on November 23, 1994 that he has a right to privacy, and would pursue legal remedy against any Town of Windham employee entering his property without owner authorization.

24) Edelman noticed the Town of Windham on June 30, 1995 that he would regard any Town of Windham official entering his property without prior written owner permission as a trespasser.

25) Edelman noticed the Town of Windham on January 29, 1996 that he would regard any Town of Windham official or agent entering his property without prior written owner permission as a trespasser engaging in illegal search.

26) Edelman owns improved property located at 217 Scotland Road in Windham Center, Connecticut and owned this property at all times relevant to this action.

27) State of Connecticut maps refer to Scotland Road as Connecticut Route Fourteen.

28) Connecticut Route Fourteen bounds 217 Scotland Road to the North.

29) Follet Road bounds 217 Scotland Road to the East.

30) The 217 Scotland Road driveway opens into Follet Road and has a gate that the Plaintiff usually locks.

7

31) Conspicuously posted signs at the 217 Scotland Road driveway
and elsewhere around the 217 Scotland Road perimeter warn
against trespass.

32) Piled brush around the perimeter of 217 Scotland Road
obstructs views from Route Fourteen and Follet Road.

33) Edelman can plainly view 217 Scotland Road from Edelman
property across Route Fourteen.

34) 217 Scotland Road has a single family residence.

35) The single family residence has a bay door on the western
side.

36) A Follet Road or Route Fourteen observer cannot see inside
the single family residence when the bay door opens.

37) Edelman began replacing roof shingles on about ten percent
of a single family residence roof at 217 Scotland Road in
early June, 1998.

38) The roof repair did not affect public health or safety.

39) The roof repair did not affect private health or safety.

40) Windham Assistant Building Official Daniel Costello examined
the roof work on June 19, 1998 and indicated that the Town
of Windham had no need to restrain the activity.

41) The State of Connecticut never promulgated a State Building
Code in accordance with statutory requirements.

42) The Town of Windham did not adopt a State Building Code
until May 16, 2000.

43) Because a lawfully adopted State Building Code regulating

building activity existed in neither the State of
Connecticut nor the Town of Windham in June, 1998, Edelman
had no obligation to abide by a State Building Code
purporting to regulate building construction and alteration.

44) Windham Building Official Donald Schultz nevertheless sought
on June 25, 1998 to coerce Edelman into complying with an
invented interpretation of an inapplicable regulatory
scheme.

45) To initiate this coercion, Schultz sent Deputy Sheriff David
Page to post a Stop Work placard and serve Edelman with a
Stop Work Order.

46) In sending Page, Schultz ignored prior written warnings to
not participate in encroachment upon Edelman property.

47) Schultz acted at the behest of First Selectman Walter
Pawelkiewicz.

48) Without permission or legal authority, Page drove about
fifty feet into the 217 Scotland Road driveway at about
11:00 A.M. on June 25, 1998 while Edelman worked on the roof
of the 217 Scotland Road single family residence.

49) Page exited the vehicle, walked around the single family
residence, and, before Edelman could object, affixed to the
residence's open bay door an orange Stop Work placard given
to him by Schultz.

50) Page did not identify himself.

51) Page had an unimpeded view of the interior of the single

family residence while affixing the Stop Work placard to the open bay door.

52) The Stop Work placard warned that "all persons acting contrary to this order or removing or mutilating this notice are liable to arrest".

53) No legal authority or purported legal authority refers to a Stop Work placard.

54) No legal authority or purported legal authority describes a procedure for affixing a Stop Work placard to a building.

55) No penalties exist for removing or mutilating a Stop Work placard.

56) Page also wanted to serve a Schultz white Stop Work Order.

57) The Stop Work Order referenced no legal authority.

58) The Stop Work Order stated that persons failing to stop work would be liable to arrest and fines.

59) A Stop Work order is criminal process.

60) A deputy sheriff can serve only civil process.

61) Page had no authority to serve a Stop Work Order and Schultz could not delegate authority he himself did not have.

62) Citing specific legal authority, Edelman instructed Page to immediately leave 217 Scotland Road.

63) For about ten minutes, Page resisted repeated Edelman requests to leave 217 Scotland Road.

64) Before leaving, Page claimed to effect service of a

Schultz's white Stop Work Order by throwing the Stop Work Order on the ground.

65) Page did not return to the vicinity of 217 Scotland Road on June 25, 1998.

66) Page had never previously affixed a Stop Work placard or served a Stop Work Order.

67) CGS § 6-32b (1997) requires completion of an instructional course to become a Deputy Sheriff.

68) CGS § 6-37a (1997) mandates publication of a Reference Manual about serving civil process.

69) Page did not consult with a Windham High Sheriff or anybody else before accepting the Edelman assignment about the legality of affixing a Stop Work placard or serving a Stop Work Order.

70) After leaving 217 Scotland Road, Page went directly to Bud's Cafe in Willimantic, about ten minutes away, to have breakfast.

71) Page parked his car at a location not visible from Bud's Cafe.

72) Page's car had a sign on the window identifying the car as belonging to a Deputy Sheriff.

73) After spending about half an hour at Bud's Cafe, Page claimed to find fresh damage to his vehicle and attributed the damage to Edelman.

74) Page drove his car to his 79 Lewiston Avenue residence in

Willimantic and spent about an hour there.

75) Page and Schultz met at Windham Town Hall between about 12:00 P.M. and 1:00 P.M..

76) Cody collaborated in the decision to have Schultz and Page pursue criminal charges against Edelman.

77) Schultz did not solicit advice from Windham Town Attorney Daniel Lamont.

78) Assistant State's Attorney Lonnie Braxton joined Page and Schultz at Windham Town Hall so that Schultz could file an arrest warrant application alleging that Edelman had violated the 1994 State Building Code by not stopping work in addition to having violated CGS § 29-263 (1997) and CGS § 29-254a (1997).

79) Schultz had the arrest warrant application affidavit notarized by about 3:00 P.M..

80) Schultz has no legal standing to file a criminal complaint under a State Building Code or any predecessor Town of Windham building code.

81) Cessation of work after service of a Stop Work Order terminates an unspecified enforcement mechanism under the State Building Code and all predecessor Town of Windham building codes.

82) No 217 Scotland Road work occurred following Page's visit until after Schultz issued a June 29, 1998 building permit.

83) No evidence exists to support Schultz's arrest warrant

application affidavit sworn statement that Edelman continued 217 Scotland Road work after Stop Work Order delivery.

84) Therefore, even if a State Building Code had legal effect in the Town of Windham, Edelman did not violate it.

85) CGS § 29-263 is not now, and never has been, a criminal statute.

86) CGS § 29-263 is not now, and never has been part, of the State Building Code or any predecessor building code.

87) CGS § 29-254a cannot constitute a basis for a criminal prosecution.

88) The arrest warrant application attestation that Edelman had violated CGS § 29-263 and CGS § 29-254a is impossible and therefore false.

89) Trooper Donald Aitken met Page and Schultz at Windham Town Hall at 5:10 P.M. because Page wanted to file assault and criminal mischief charges against Edelman.

90) Trooper Aitken observed no physical injury to Page justifying an assault complaint.

91) Trooper Aitken accepted a sworn statement from Page alleging that Edelman damaged Page's vehicle.

92) Page never sought damage restitution from Edelman in a civil court where a lower standard of proof prevails than in a criminal court.

93) As a result of Page's warrantless CGS § 53a-116 criminal mischief complaint, Trooper Aitken and Trooper William Bundy

arrived at 217 Scotland Road at about 5:30 p.m. before
arresting and tightly handcuffing Edelman at 5:57 p.m..

94) Schultz testified at trial to having seen Edelman working on
the 217 Scotland Road roof at 6:00 p.m..

95) Trooper Aitken's arrest report states that Edelman remained
at the Colchester State Police Barracks until 9:00 p.m..

96) Schultz testified at trial to having passed by 217 Scotland
Road at 6:45 a.m. the next morning and seen evidence of more
roofing work.

97) Upon Page's departure from 217 Scotland Road, Edelman
immediately telephoned Sergeant Christopher Arciero and
Attorney Janet Ainsworth of the Department of Public Safety
and Colchester State Police Sergeant James Powers.

98) Edelman spoke with Sergeant Arciero and Attorney Ainsworth
to check administrative appeal procedure.

99) Edelman spoke with Sergeant Powers about filing a criminal
trespass complaint against Page.

100) Having stopped work after Page's arrival, Edelman faxed the
first of three related CGS § 29-252(d) administrative
appeals to State Building Inspector Christopher Laux between
3:30 p.m. and 4:15 p.m..

101) Schultz testified at trial to personally having seen at 2:00
p.m. on June 25, 1998 evidence of more 217 Scotland Road
roofing work.

102) State Building Inspector Laux August 3, 1998 meeting notes

14

record only that Schultz made morning and evening visits on June 25, 1998 to 217 Scotland Road.

103) Edelman did not obtain administrative relief from State Building Inspector Laux in CGS § 29-252(d) administrative appeals eventually known as A-18-98, A-23-98, and A-24-98.

104) Edelman appealed A-18-98, A-23-98, and A-24-98 to the Codes and Standards Committee.

105) Codes and Standard Committee lawyers Dawn Carnese and Janet Ainsworth recused themselves from advising the Codes and Standards Committee about A-18-98, A-23-98, and A-24-98.

106) All Codes and Standard Committee members also recused themselves from hearing A-18-98, A-23-98, and A-24-98.

107) The Codes and Standards Committee would not grant Edelman's subsequent request that A-18-98, A-23-98, and A-24-98 proceed with different tribunal members.

108) The Codes and Standards Committee has yet to issue a CGS Chapter 54 "final decision" for any of the appeals pertaining to Schultz's June 25, 1998 Stop Work Order.

109) To avoid further confrontation with Schultz after Page's June 25, 1998 visit, Edelman applied for a building permit on the morning of June 26, 1998 even though under no legal obligation to do so.

110) Schultz issued the building permit on June 29, 1998.

111) The building permit specifically stated that the Plaintiff obtained the building permit under duress, that the

15

Plaintiff reserved all rights, and that the granting of the permit abated all enforcement action.

112) A building permit is a contract.

113) Despite Schultz's contractual promise to abate enforcement action, Edelman was arrested by Trooper David Piela on July 2, 1998 as a result of falsehoods contained in Schultz's Arrest Warrant Affidavit.

114) After arriving at the Colchester Barracks, Connecticut State Police Trooper Fred Briger arrested Edelman.

115) Judge Francis Foley presided over a jury trial that lasted from October 14, 1999 to October 22, 1999.

116) The criminal trial concurrently considered whether Edelman perpetrated CGS § 53a-116 *criminal mischief in the second degree* and violated CGS § 29-263, *permit to construct or alter*.

117) Although supposedly at trial for violating the State Building Code, CGS § 29-263 is actually a civil advisory statute that does nothing more than mandate the inclusion of a permit application procedure in a State Building Code promulgated by the Department of Public Safety under CGS § 29-252.

118) Attorney Arthur Meisler represented Edelman during the trial.

119) Bitter personal acrimony existed between State's Attorney Mark Solak and Attorney Arthur Meisler.

120) Disparaging comments about Attorney Meisler contributed significantly to Solak's May 17, 2001 termination as Windham State's Attorney.

121) State's Attorney Solak assigned Assistant State's Attorneys Lonnie Braxton and Keith Currier as trial prosecutors.

122) Schultz has collected hundreds of Town of Windham Resolution Number 766 late filing surcharges for working without a permit.

123) Except for Edelman, collection of a Town of Windham Resolution Number 766 late filing surcharge has ended all Schultz enforcement action for working without a permit.

124) Edelman is the only person or entity ever tried in Connecticut for violating CGS § 29-263, a civil advisory statute.

125) No person, except ostensibly Edelman, has ever been tried in Connecticut for violating the State Building Code.

126) All evidence contradicts Schultz's sworn trial testimony of having personally observed continued 217 Scotland Road roofing work subsequent to Page's 217 Scotland Road visit, either before or after his arrest warrant attestation.

127) Schultz lied under oath during the trial.

128) Westcott met with sequestered witnesses during the trial.

129) Westcott acted at the behest of Cody and Lescoe.

130) On October 22, 1999, an improperly charged jury exonerated the Plaintiff of the CGS § 53a-116 criminal mischief charge

but found Edelman guilty of violating CGS § 29-263, *permit to construct or alter*.

131) The Court improperly applied CGS 29-254a State Building Code violation penalties to the CGS § 29-263 civil advisory statute conviction.

132) The Court fined Edelman five hundred dollars and sentenced the Plaintiff to ninety days in jail.

133) The Court refused to allow Edelman to post an appeal bond and had the Plaintiff immediately jailed at a Level Four high security prison without Commissioner of Corrections consultation.

134) On October 25, 1999, the Court set an appeal bond at a promise to appear and suspended the unexecuted portion of the prison sentence.

135) The Appellate Court remanded the case for new trial.

136) The Supreme Court allowed the Appellate Court ruling to stand.

137) Having previously prevailed with a CGS 53a-116 acquittal, all remaining charges terminated in Edelman's favor with dismissals that followed an unconditional CGS § 29-254a nolle prosequi on July 31, 2003 and an unconditional CGS § 29-263 nolle prosequi on October 24, 2003.

138) The Norwich Bulletin and the Willimantic Chronicle published stories about the Plaintiff's arrest and trial.

139) In a February 8, 2000 Associated Press article, Page

repeated the accusation that Edelman damaged his vehicle
even after Edelman's exoneration on the CGS § 53a-116
criminal mischief charge.

140) Pawelkiewicz, Paulhus, and Cody also made published
defamatory comments about Edelman.

141) The CGS § 53a-116 criminal mischief prosecution could not
have arisen without civil rights infringements related to
unlawful enforcement of a State Building Code.

142) Schultz, Pawelkiewicz, and Cody fomented a selective and
retaliatory prosecution of Edelman through the unlawful
municipal policy and practice of enforcing a State Building
Code.

143) The measures taken against Edelman nevertheless violated the
procedures that the Town of Windham did purport to have
through its enforcement of a State Building Code.

144) The Defendants were aware, or should have been aware, of the
numerous deficiencies attendant to Edelman's prosecution.

145) The Defendants failed to provide the prosecuting authority
with material exculpatory facts.

146) Pawelkiewicz, Lescoe, and Paulhus failed to discipline or
properly train Schultz.

147) The Defendants acted individually and in concert to deprive
Edelman of his civil rights.

148) As a result of outrageous conduct and defamatory statement,
Edelman has suffered humiliation, mental anguish, and

physical affliction, with the effects extending to his
family.

1st COUNT (42 USC § 1981 and 42 USC § 1988, all Defendants)

149) This Count incorporates paragraphs 1 through 148 by
reference.

150) Edelman has the same right to the security of his person and
property as any white citizen.

151) Instead, the Town of Windham impaired Edelman's right to
privacy, enjoyment of his property, and personal liberty by
trying to impose upon Edelman a State Building Code despite
its clear legal invalidity and despite the complete absence
of any public interest in Edelman's personal activity.

152) Even though Edelman entered into a contract with the Town of
Windham to mitigate infringement of his Fourth Amendment
rights, the Defendants took no heed of this contract and
proceeded to instead engage in a conspiracy to corrupt an
invented and selective criminal prosecution to which no
white citizen has ever been subjected.

153) Injuries suffered by Edelman include loss of liberty, harm
to his reputation, humiliation, general embarrassment,
emotional trauma and related physical ailments, loss of
affection and impairment of his marital relations, extreme
anxiety and stress, loss of sleep and appetite, diminished
earnings, and loss of enjoyment of life's activities.

<u>2nd COUNT (42 USC § 1982 and 42 USC § 1988, all Defendants)</u>

154) This Count incorporates paragraphs 1 through 148 by reference.

155) Edelman has the same right to hold property as any white citizen.

156) Instead, the Town of Windham burdened Edelman's right to hold property by trying to impose upon Edelman a State Building Code despite its clear legal invalidity and despite the complete absence of any public interest in Edelman's personal activity.

157) Even though Edelman entered into a contract with the Town of Windham to mitigate infringement of his property rights, the Defendants took no heed of this contract and instead proceeded to engage in a conspiracy to corrupt an invented and selective criminal prosecution to which no white citizen has ever been subjected.

158) As a result, Edelman suffered the injuries more particularly set forth in the 1st Count.


<u>3rd COUNT (42 USC § 1983 and 42 USC § 1988, all Defendants)</u>

**FIRST AMENDMENT**

159) This Count incorporates paragraphs 1 through 148 by reference.

<u>Right of Association</u>

160) Edelman, as well as several political associates who similarly challenged the Town of Windham's governance, came to find themselves involved in well publicized criminal prosecutions.

161) Even though these prosecutions proved unsuccessful, the obvious risks in challenging the status quo in Windham imposed a direct, substantial, and significant burden on Edelman by deterring Edelman from associating with like minded people and by deterring them from associating with him.

Right of Access

162) Edelman was entitled to exhaust all the administrative and civil remedy to which he availed himself precedent to any criminal enforcement action.

163) The criminal prosecution targeting Edelman had the effect of not just interfering with, but actually rendering futile, Edelman's recourse to civil remedy because a civil decision cannot disturb a criminal conviction.

164) Although Edelman nevertheless still had a right to a fair criminal trial, Westcott's presence among sequestered witnesses indicates a conspiracy to prejudice the proceeding against Edelman.

165) Schultz – Right of Association

Schultz chilled Edelman's associational rights by conspiring with Pawelkiewicz, Cody, and Page to foment a groundless,

malicious, and selective prosecution against Edelman.

166) <u>Schultz – Right of Access</u>

After rendering Edelman's civil remedy futile by instigating his arrest, Schultz met with Westcott while sequestered at Edelman's trial.

167) <u>Pawelkiewicz – Right of Association</u>

Pawelkiewicz chilled Edelman's associational rights by conspiring with Schultz, Cody, and Page to foment a groundless, malicious, and selective prosecution against Edelman.

168) <u>Pawelkiewicz, Right of Access</u>

Pawelkiewicz rendered Edelman's civil remedy futile through his instrumental role in initiating and abetting the criminal prosecution against Edelman.

169) <u>Cody – Right of Association</u>

Cody chilled Edelman's associational rights by conspiring with Schultz, Pawelkiewicz, and Page to foment a groundless, malicious, and selective prosecution against Edelman.

170) <u>Cody – Right of Access</u>

After rendering Edelman's civil remedy futile by advising Schultz to have Edelman arrested, Cody sent Westcott to Edelman's criminal trial to prejudice the proceeding against Edelman through Westcott's consultation with sequestered witnesses.

171) <u>Westcott – Right of Access</u>

Westcott met with sequestered witnesses during Edelman's
criminal trial to prejudice the proceedings against him.

172) <u>Lescoe – Right of Association</u>

Lescoe chilled Edelman's associational rights by neither
intervening to stop a prosecution that he knew was based on
the unlawful policy and custom of enforcing a State Building
Code nor otherwise disciplining or properly training Schultz
for fomenting a prosecution against Edelman that lacked a
legal basis.

173) <u>Lescoe – Right of Access</u>

Lescoe conspired with Schultz, Cody, Westcott, and Page to
prejudice the criminal prosecution against Edelman by
abetting Westcott's meetings with sequestered witnesses at
Edelman's trial.

174) <u>Paulhus – Right of Association</u>

Paulhus chilled Edelman's associational rights by neither
intervening to stop a prosecution that he knew was based on
the unlawful former policy and custom of enforcing of a
State Building Code nor otherwise disciplining or properly
training Schultz for fomenting a prosecution against Edelman
that lacked a legal basis.

175) <u>Page – Right of Association</u>

After attempting to serve criminal process without actually
having such authority and then manufacturing a criminal
mischief charge against Edelman, Page chilled Edelman's

associational rights by putting into effect the Schultz, Pawelkiewicz, and Cody conspiracy to foment a groundless, malicious, and selective prosecution against Edelman.

176) Page – Right of Access

After rendering Edelman's civil remedy futile by providing a pretextual basis for his arrests, Page met with Westcott while sequestered at Edelman's trial.

177) As a result of the reckless, wanton, and deliberate Defendant conspiracy to falsely arrest and maliciously prosecute Edelman in order to intimidate him into abandoning his First Amendment rights to assemble with friends and political associates and to file petitions seeking a redress of grievances, Edelman suffered the injuries more particularly set forth in the 1st Count.


4th COUNT (42 USC § 1983 and 42 USC § 1988, all Defendants)

**FOURTH AMENDMENT**

178) This Count incorporates paragraphs 1 through 148 by reference.

179) Because neither the Town of Windham nor the State of Connecticut had a lawfully adopted State Building Code in June, 1998, no probable cause existed to arrest Edelman for failing to comply with a State Building Code.

180) Because Edelman promptly informed the State Police about his established expectation of privacy and about a deputy

sheriff's lack of legal authority, with or without a State
Building Code, to serve a Stop Work Order or post a Stop
Work placard, no probable cause existed to arrest Edelman
for CGS § 53a-116 criminal mischief.

181) Even if a State Building Code applied to Edelman, no
probable cause existed to arrest Edelman under its
provisions because Edelman neither received a valid Stop
Work Order, a necessary element for commencing State
Building Code enforcement, nor engaged in activity that
would make him subject to State Building Code enforcement.

182) Because CGS § 29-263 is a civil advisory statute and because
CGS § 29-254a cannot constitute a basis for a criminal
prosecution, no probable cause existed to arrest Edelman
under either statute.

Schultz

183) Schultz sent Page to 217 Scotland Road as a way to
circumvent Edelman's known expectation of privacy.

184) Once there, Schultz's agent had the opportunity to engage in
a warrantless search involving the examination of Edelman's
curtilage and the interior of Edelman's house, thereby
setting Edelman up for future allegations of building code
violation.

185) In the absence of any lawful basis to arrest Edelman,
Schultz engineered Edelman's arrest through material
misrepresentations of fact and law.

186) Schultz subsequently gave trial testimony that contained numerous material misrepresentations and inconsistencies, if not outright lies, and concealed and/or misrepresented material exculpatory facts.

187) <u>Pawelkiewicz</u>

Pawelkiewicz ordered Schultz to restrain Edelman's 217 Scotland Road roof work and was complicit in Edelman's arrest.

<u>Cody</u>

188) Cody advised Schultz to have Edelman arrested despite the absence of legal justification for offering such advice.

189) Cody subsequently sent Westcott to Edelman's trial, where Westcott conferred with sequestered witnesses.

190) Cody concealed material exculpatory facts.

191) <u>Westcott</u>

Westcott met with sequestered witnesses during Edelman's criminal trial to prejudice the proceedings against him.

192) <u>Lescoe</u>

Lescoe neither intervened to stop a prosecution that he knew was based on the unlawful policy and custom of enforcing a State Building Code nor otherwise disciplined or properly trained Schultz for fomenting a prosecution against Edelman that lacked a legal basis.

193) <u>Paulhus</u>

Paulhus neither intervened to stop a prosecution that he

knew was based on the unlawful former policy and custom of enforcing a State Building Code nor otherwise disciplined or properly trained Schultz for fomenting a prosecution against Edelman that lacked a legal basis.

194) Page

After diverting attention from his trespass onto and warrantless inspection of Edelman's property into a pretext for Edelman's false criminal mischief arrest, Page acted as the linchpin and excuse for the Town of Windham's malicious, selective, and groundless prosecution against Edelman.

195) In the absence of any probable cause, the Defendants took their actions jointly and severally for the illegal and unconstitutional purpose of engineering Edelman's wrongful arrest, conviction, and imprisonment, with the further improper intent of protracting subsequent criminal proceedings against him.

196) As a result of the reckless, wanton, and deliberate Defendant conspiracy to violate Edelman's privacy, invade Edelman's protected curtilage, and falsely arrest and maliciously prosecute Edelman for asserting his lawful right to engage in work that in no way implicated the public interest, Edelman suffered the injuries more particularly set forth in the 1st Count.

5th COUNT (42 USC § 1983 and 42 USC § 1988, all Defendants)

**FOURTEENTH AMENDMENT**

197) This Count incorporates paragraphs 1 through 148 by
reference.

198) Each of the three ways through which a building official can
exercise State Building Code enforcement, a Notice of
Violation, a Stop Work Order, or a Notice of Unsafe
Structure, requires formal notice to an alleged violator and
gives the alleged violator an opportunity to cure the
defective condition cited to abate further enforcement
action.

199) Alternatively, the alleged violator can pursue an
administrative appeal in accordance with the Connecticut
General Statutes.

200) If the alleged violator does not comply with an enforcement
order not appealed or does not comply with an enforcement
order after the unsuccessful exhaustion of administrative
remedy, the State Building Code states that a building
official can effect compliance only by requesting that
"legal counsel for the jurisdiction" institute the
appropriate proceeding at law.

201) The Town of Windham has a well known and routinely
implemented policy and practice, instituted pursuant to Town
of Windham Resolution, of terminating enforcement action if
an alleged violator complies with an enforcement order.

202) Although not legally obligated to abide by a State Building
Code and although not lawfully served with a Stop Work Order
as required by the State Building Code, Edelman stopped work
and obtained a building permit on the basis of the Stop Work
Order promise and the Town of Windham policy and practice
that no further enforcement action would occur if he
fulfilled these conditions.

203) Even though Edelman did everything that Town of Windham
policy and practice and the Stop Work Order demanded him to
do and even though he appealed the enforcement action
against him almost immediately, and before any arrest, a
criminal prosecution marred by Westcott's conference with
sequestered witnesses commenced anyway, thereby depriving
Edelman of due process and equal protection rights both
civilly and criminally.

Schultz

204) Schultz failed to abide by Town of Windham policy and
practice, broke his own written Stop Work Order promise, and
misled Edelman about the nature of the allegations against
him when he pursued criminal prosecution against Edelman
despite Edelman's cessation of work and procurement of a
building permit.

205) After rendering Edelman's civil remedy futile by instigating
his arrest, Schultz met with Westcott while sequestered at
Edelman's trial.

206) <u>Pawelkiewicz</u>

Pawelkiewicz ordered Schultz to initiate the actions against Edelman and rendered Edelman's administrative remedy futile by acting with deliberate indifference when Schultz pursued enforcement action totally incompatible with well known Town of Windham policy and practice.

<u>Cody</u>

207) Cody advised Schultz to have Edelman arrested even though Cody knew based upon prior experience that Edelman would avail himself of his appeal rights and even though he knew, or should have known, that Edelman would comply with the Stop Work Order's demands in order to foreclose the possibility of further criminal proceedings against him.

208) After rendering Edelman's civil remedy futile by advising Schultz to have Edelman arrested, Cody sent Westcott to Edelman's criminal trial to prejudice the proceeding against Edelman through Westcott's consultation with sequestered witnesses.

209) <u>Westcott</u>

Westcott met with sequestered witnesses during Edelman's criminal trial to prejudice the proceedings against him.

210) <u>Lescoe</u>

After abetting Westcott's meetings with sequestered witnesses at Edelman's trial, Lescoe ignored Edelman's statutory petition to have Schultz disciplined and/or

properly trained.

211) <u>Paulhus</u>

Paulhus abetted Cody efforts related to defeating the administration of justice and ignored Edelman's statutory petition to have Schultz disciplined and/or properly trained.

212) <u>Page</u>

Page met with Westcott while sequestered at Edelman's trial.

213) The Defendants conspired to deprive Edelman of due process by first conspiring to have him arrested and selectively prosecuted before he could foreclose the possibility of criminal prosecution through civil remedy and then by corrupting the resulting criminal proceeding with false witness testimony and Westcott's sequestration order violation.

214) Lescoe and Paulhus further deprived Edelman of due process by ignoring Edelman's CGS § 29-260(b) petitions to have Schultz disciplined and/or properly trained.

215) The Defendants deprived Edelman of equal protection by colluding in dispensing with clearly established policy and practice to make it possible to treat Edelman differently from hundreds of other similarly situated persons, resulting in a selective, malicious, and groundless prosecution against Edelman, unique in Connecticut.

216) As a result of the reckless, wanton, and deliberate

Defendant conspiracy to violate Edelman's due process and
equal protection rights, Edelman suffered the injuries more
particularly set forth in the 1st Count.

6th COUNT (42 USC § 1985 and 42 USC § 1988, all Defendants)

217) This Count incorporates paragraphs 1 through 148 and 198
through 215 by reference.

218) Edelman has the right to the due course of justice and equal
protection of the laws without obstruction or hinderance.

219) Instead, the Defendants first conspired to obstruct the due
course of justice by having Edelman arrested and selectively
prosecuted before he could foreclose the possibility of
criminal prosecution through civil remedy and then by
defeating the integrity of the resulting criminal proceeding
through false witness testimony and Westcott's sequestration
order violation.

220) Lescoe and his former Executive Administrator Paulhus
further sought to obstruct the due course of justice by
ignoring Edelman's CGS § 29-260(b) petitions to have Schultz
disciplined and/or properly trained.

221) The Defendants deprived Edelman of equal protection by
colluding in dispensing with clearly established policy and
practice to make it possible to treat Edelman differently
from hundreds of other similarly situated persons, resulting
in a selective, malicious, and groundless prosecution

against Edelman, unique in Connecticut.

222) As a result of the reckless, wanton, and deliberate Defendant conspiracy to obstruct the due course of justice and deny Edelman the equal protection of the laws, Edelman suffered the injuries more particularly set forth in the 1st Count.

7th COUNT (42 USC § 1986 and 42 USC § 1988, all Defendants)

223) This Count incorporates paragraphs 1 through 148, 198 through 215, and 218 through 222 by reference.

224) Although the Defendants knew, at a bare minimum, that the Town of Windham could not unilaterally dispense with a well established policy and practice for terminating an enforcement action against a Stop Work order recipient, that the selective prosecution against Edelman needed a legitimate legal basis, that Edelman had a right to administrative remedy, and that Edelman had a right to a fair trial, no Defendant made any effort to prevent or aid in preventing the wrongs perpetrated against Edelman.

225) As a result of the reckless, wanton, and deliberate Defendant conspiracy to abet rather than prevent the usurpation of Edelman's entitlement to the due course of justice and the equal protection of the laws, Edelman suffered the injuries more particularly set forth in the 1st Count.

34

8th COUNT (Malicious Prosecution, Schultz and Page)

226) This Count incorporates paragraphs 1 through 148 and 179 through 194 by reference.

227) Edelman's arrest, trial, and conviction occurred in the absence of probable cause and was effectuated with deliberate indifference to Edelman's right to remain free from such an assault.

228) Because Edelman ultimately obtained a dismissal on every one of the charges brought against him, the criminal prosecution terminated entirely in Edelman's favor.

229) Schultz and Page initiated the false charges against Edelman and conspired with the authorities in prosecuting Edelman.

230) As a result of the reckless, wanton, and deliberate conspiracy by Schultz and Page to selectively and maliciously prosecute Edelman in the absence of probable cause, Edelman suffered the injuries more particularly set forth in the 1st Count.

9th Count (Trespass – Schultz, Pawelkiewicz, and Page)

231) This Count incorporates paragraphs 1 through 148 by reference.

232) Although Schultz and Pawelkiewicz knew that Edelman had an expectation of privacy and knew, or should have known, that a deputy sheriff lacked the authority to serve a Stop Work

Order, they nevertheless directed Page to enter 217 Scotland
Road to serve Edelman with such a Stop Work Order.

233) Page trespassed by disregarding plainly visible No
Trespassing signs and by defying Edelman's repeated
exhortations to leave 217 Scotland Road.

234) As a result of the reckless, wanton, and deliberate
collusion among Schultz, Pawelkiewicz, and Page to trespass
upon Edelman's property, Edelman suffered the injuries more
particularly set forth in the 1st Count.

10th COUNT (Intentional and Negligent Infliction of
            Emotional Distress – all Defendants)

235) This Count incorporates paragraphs 1 through 148, 150
through 152, 179 through 194, and 198 through 215 by
reference.

236) Schultz

To accomplish the objective of having Edelman fined and
imprisoned for paying a day late the eleven dollars
ostensibly needed to replace a few roof shingles, Schultz
swore to numerous falsehoods and misrepresentations to aid
the pursuit of Edelman through the Superior Court, Appellate
Court, and Supreme Court, and again into the Superior Court
despite knowing from continual building official training as
well as from Town of Windham policy and practice that
Edelman had done nothing that would justify a criminal
prosecution.

36

237) <u>Pawelkiewicz</u>

Pawelkiewicz knew that Schultz had dispensed with Town of Windham policy and practice to effect a criminal prosecution against Edelman, but exhibited deliberate indifference to this selective treatment of Edelman.

238) <u>Cody</u>

Having given Schultz the legally unjustifiable advice to lodge criminal charges against Edelman, Cody then attempted to conceal his own complicity in Westcott's consultation with sequestered witnesses at Edelman's trial.

239) <u>Westcott</u>

Westcott met with sequestered witness at Edelman's trial to undermine the administration of justice.

240) <u>Lescoe</u>

Although Lescoe knew that the criminal prosecution against Edelman lacked a legal basis, he instead chose to abet Cody efforts to defeat the administration of justice and to ignore Edelman statutory petitions to have Schultz disciplined and/or properly trained.

241) <u>Paulhus</u>

Although Paulhus knew that the criminal prosecution against Edelman lacked a legal basis, he instead chose to abet Cody efforts to defeat the administration of justice and to ignore Edelman statutory petitions to have Schultz disciplined and/or properly trained.

242) <u>Page</u>

Having diverted attention from his 217 Scotland Road
trespass by filing a criminal complaint against Edelman,
Page subsequently failed to fulfill his peace officer duty
to report that he never had legal authority to enter 217
Scotland Road.

243) As a result of extreme and outrageous Defendant conduct,
which they should have minimally realized would cause
Edelman emotional distress, Edelman did indeed suffer
emotional distress as well as related injuries more
particularly set forth in the 1st Count.

<u>11th COUNT</u> (Libel, Slander, and Defamation –
                all Defendants except Westcott)

244) This Count incorporates paragraphs 1 through 148 by
reference.

245) <u>Schultz</u>

Schultz publicly characterized Edelman as a vexatious
litigator.

246) <u>Pawelkiewicz</u>

Pawelkiewicz publicly characterized Edelman as a violent
menace to others.

247) <u>Cody</u>

Cody publicly characterized Edelman as a vexatious
litigator.

248) <u>Lescoe</u>

Lescoe publicly characterized Edelman as a vexatious litigator.

249) <u>Paulhus</u>

Paulhus publicly characterized Edelman as a vexatious litigator.

250) <u>Page</u>

Page publicly accused Edelman of perpetrating criminal mischief against him despite a prior jury acquittal on this charge.

251) Edelman has never been accused of a violent crime or sued for vexatious litigation.

252) As a result of the reckless and untrue allegations that harmed Edelman's reputation, Edelman suffered the injuries more particularly set forth in the 1st Count.


<u>12th COUNT (Abuse of Process – Schultz and Page)</u>

253) This Count incorporates paragraphs 1 through 148 and 179 through 194 by reference.

254) <u>Schultz</u>

Knowing that Edelman had done nothing that would trigger criminal prosecution under a State Building Code, whether lawfully adopted or not, Schultz conflated the State Building Code with CGS § 29-263, a civil advisory statute, and CGS § 29-254a, a penalty statute that cannot constitute the basis for a criminal prosecution, to give the erroneous

impression that the Connecticut courts had jurisdiction over Edelman in order to unlawfully displace the administrative remedy to which Edelman would normally have had entitlement and thereby expose Edelman to criminal prosecution and penalties.

255) Page

Realizing that he had lacked authority to attempt service of a Stop Work Order upon Edelman and that Edelman had grounds, at a minimum, for trespass against him, Page pre-emptively filed a criminal complaint against Edelman to divert attention from the wrongdoing of his own creation that led to the situation about which he complained.

256) Page and Schultz recklessly, wantonly, and deliberately abused process to deprive Edelman of legal recourse normally available to him, thereby causing Edelman to suffer the injuries more particularly set forth in the 1st Count.


13th Count (Breach of Contract – Schultz)

257) This Count incorporates paragraphs 1 through 148 and 198 through 215 by reference.

258) Because the Stop Work Order indicated only that "[a]ll persons acting contrary to this order are liable to arrest and fines" and because the Town of Windham had a written and well known policy and practice adopted pursuant to municipal resolution that persons not acting contrary to a Stop Work

Order would face no further enforcement action, Edelman
stopped work and entered into a contractual arrangement with
Schultz by purchasing a building permit.

259) The building permit specifically stipulated that all
enforcement action against Edelman had ended by virtue of
his purchase of the building permit.

260) Despite implicit and explicit contractual terms promising
Edelman an end to all enforcement action, Schultz proceeded
with a malicious, selective, and groundless prosecution
against Edelman anyway, thereby breaching his contractual
promises and causing Edelman to suffer the injuries more
particularly set forth in the 1st Count.

14th Count (Interference with Contract –
          all Defendants except Schultz)

261) This Count incorporates paragraphs 1 through 148, 198
through 215, and 258 through 259 by reference.

262) Pawelkiewicz

Through the deliberate indifference of not requiring Schultz
to comply with the Town of Windham policy and practice of
ending enforcement action against an alleged building code
violator who abides by a Stop Work Order and obtains a
building permit and by otherwise supporting, financially and
otherwise, the criminal prosecution against Edelman,
Pawelkiewicz interfered with a contract promising Edelman an
end to all enforcement action against him.

41

263) Cody

Cody interfered with Schultz's contractual promise to
Edelman to end all enforcement action by facilitating a
criminal prosecution against Edelman.

264) Westcott

Westcott interfered with Schultz's contractual promise to
Edelman to end all enforcement action by facilitating a
criminal prosecution against Edelman.

265) Lescoe

Through the deliberate indifference of not requiring Schultz
to comply with the Town of Windham policy and practice of
ending enforcement action against an alleged building code
violator who abides by a Stop Work Order and obtains a
building permit, by not entertaining Edelman's statutory
disciplinary petition against Schultz, and by otherwise
supporting, financially and otherwise, the criminal
prosecution against Edelman, Lescoe interfered with a
contract promising Edelman an end to all enforcement action
against him.

266) Paulhus

Through the deliberate indifference of not requiring Schultz
to comply with the Town of Windham policy and practice of
ending enforcement action against an alleged building code
violator who abides by a Stop Work Order and obtains a
building permit, by not entertaining Edelman's statutory

disciplinary petition against Schultz, and by otherwise
supporting, financially and otherwise, the criminal
prosecution against Edelman, Paulhus interfered with a
contract promising Edelman an end to all enforcement action
against him.

267) Page
Cody interfered with Schultz's contractual promise to
Edelman to end all enforcement action by facilitating a
criminal prosecution against Edelman.

268) Despite implicit and explicit contractual terms promising
Edelman an end to all enforcement action, the afore-
mentioned Defendants maliciously and without justification
aided and abetted a criminal prosecution against Edelman,
thereby interfering with the contractual promise made to
Edelman that such an enforcement action would not occur and
causing Edelman to suffer the injuries more particularly set
forth in the 1st Count.


15th Count (Actual and Constructive Fraud – Schultz)

256) This Count incorporates paragraphs 1 through 148 and 198
through 215 by reference.

257) Relying upon Schultz's Stop Work Order representations that
if Edelman stopped work and obtained a "required permit"
then Edelman would not be "liable to arrest and fines" and a
written and well known Town of Windham policy and practice

43

adopted pursuant to municipal resolution that persons not acting contrary to a Stop Work Order would face no further enforcement action, Edelman stopped work and entered into a contractual arrangement with Schultz by purchasing a building permit.

258) Unknown to Edelman when he bought a building permit the morning after Page's visit with a Stop Work Order, Schultz had acted virtually without delay following Page's 217 Scotland Road visit to apply for Edelman's arrest and prosecution.

259) Although the building permit specifically stipulated that all enforcement action against Edelman had ended by virtue of his purchase of the building permit, Schultz remained silent with regard to this stipulation.

260) Schultz defrauded Edelman by making contractual promises to abate all enforcement action against Edelman that he never had any intention of keeping, thereby causing Edelman to suffer the injuries more particularly set forth in the 1st Count.


PRAYER FOR RELIEF

The Defendants knowingly, maliciously, willfully, and wantonly colluded to deprive the Plaintiff of numerous rights, with reckless disregard for the injuries that such retaliation would inflict on the Plaintiff.

44

WHEREFORE, the Plaintiff demands relief as to all Defendants, jointly and severally, as follows:

1)   Actual or compensatory damages;

2)   Punitive damages;

3)   Attorneys fees pursuant to 42 USC § 1988;

4)   Declaratory relief preventing the Defendants from threatening Edelman with State Building Code enforcement;

5)   All other equitable relief to which Edelman has an entitlement; and

6)   All other costs and relief to which Edelman has an entitlement.

<u>JURY CLAIM</u>

The Plaintiff demands that a jury try all issues.

Plaintiff Steven Edelman

/s/ Jeremy D. Booty
_____
by Jeremy D. Booty, Federal Bar No. ct03461

Jeremy D. Booty, Attorney at Law
120 Broadway
Norwich, Connecticut 06360
telephone: (860) 889-8586
facsimile: (860) 889-8208
email: booty@snet.net

45

CERTIFICATION

The Plaintiff mailed the accompanying *Amended Complaint* on

December 26, 2008 to the following counsel of record:

Jon S. Berk, Esquire
Gordon, Muir, and Foley, LLP
Hartford Square North
Ten Columbus Boulevard
Hartford, Connecticut 06106-5123


Elliot Spector, Esquire
Noble, Spector, Young, and O'Connor, P.C.
One Congress Street
Fourth Floor
Hartford, Connecticut 06114-1067




/s/ Jeremy D. Booty
_____
Jeremy D. Booty




Court Clerk
United States District Court
450 Main Street
Hartford, Connecticut 06103