# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

STEVEN EDELMAN,
    *Plaintiff*,

    v.

DAVID PAGE, *et al.*,
    *Defendants*.

No. 3:00-cv-01166 (JAM)

## ORDER DENYING POST-JUDGMENT MOTION FOR RELIEF

Plaintiff has filed a *pro se* post-judgment motion for relief on grounds that I should have recused myself as the judge in his case. The alleged basis for my recusal is that plaintiff's father was my grade school teacher in New York about 40 years ago, that plaintiff's father knows my father, and that plaintiff himself met with me almost 20 years ago and discussed facts relating to his case. I will deny plaintiff's motion for relief for substantially the reasons well-stated in defendant Donald Schultz's opposition memorandum (Doc. #372) and also for the further reasons stated in this order.

### BACKGROUND

Plaintiff filed this lawsuit against 30 defendants in June 2000. *See Edelman v. Page*, 2015 WL 1395893, at *1 (D. Conn. 2015) (describing factual background of this case), *aff'd*, 683 F. App'x 60 (2017), *cert. denied*, 138 S. Ct. 251 (2017). The complaint alleged that plaintiff's rights were violated by numerous government officials in connection with his arrest over a dispute about whether he needed a permit to replace shingles on his house in Windham, Connecticut. *Ibid.*

With many procedural twists and turns, the case persisted on the federal court docket for more than a decade until it was finally transferred to my docket in April 2014. Doc. #284. That

1

was a few weeks after I began my service as a federal judge, and the transfer was in accordance with a random assignment to me by the Clerk's Office of large numbers of cases from other judges' dockets.

By the time this case arrived on my docket, there were only two of the original 30 defendants remaining: defendant Donald Schultz (the town's building official) and David Page (a deputy sheriff). I proceeded to rule on numerous motions, both procedural and substantive. On August 8, 2014, I denied plaintiff's motion to file an amended complaint against defendants Schultz and Page. Doc. #320. I ruled that "[t]he motion is manifestly untimely and plainly fails to establish 'good cause' for its filing fourteen years into this case, more than two-and-a-half years after present counsel filed his appearance, after the close of discovery, and on the eve of argument of the summary judgment motions." *Ibid.*

On March 22, 2015, I granted in part and denied in part defendants' motion for summary judgment; I dismissed plaintiff's sole remaining claim against Schultz, and I dismissed all but one of plaintiff's remaining claims against Page. Doc. #322 (*Edelman v. Page*, 2015 WL 1395893 (D. Conn. 2015)). On November 30, 2015, I denied plaintiff's motion for reconsideration of my summary judgment ruling. Doc. #333.[1]

I thereafter set the case down for trial in May 2016 and referred the parties to U.S. Magistrate Judge Joan Margolis for a settlement conference. Docs. #349 and #350. In March 2016, I was surprised to learn from Judge Margolis that plaintiff had told her during the course of a settlement conference that he had a personal connection to me.[2] When Judge Margolis called to

---

[1] On August 4, 2014, I heard oral argument from the parties on defendants' summary judgment motions. Doc. #317. The transcript of the oral argument (Doc. #366) reflects that plaintiff and his wife were present with plaintiff's counsel at the summary judgment hearing. Nothing in the transcript indicates any statement by plaintiff, his wife, or his counsel that plaintiff had any prior personal connection to me, and I have no recollection of recognizing plaintiff or realizing any personal connection at that time between plaintiff or his family and me or my family.

[2] Plaintiff complains that Judge Margolis breached settlement confidences by relating to me what he had told her. I do not agree. Although it is unusual for a Magistrate Judge to disclose to a District Judge the content of any

advise me of this, I promptly entered the following order on March 24, 2016, to require plaintiff to describe any reasons he may possibly have for my recusal:

> ORDER TO SHOW CAUSE RE ANY BASIS FOR RECUSAL. If any party has any basis to believe that Judge Meyer has any prior knowledge of or direct or indirect connection to the parties or the facts of this litigation or that Judge Meyer should otherwise consider for any reason whether to recuse himself from this case, such party shall file by Friday, April 1, 2016, a statement or memorandum stating in detail such factual basis for consideration.

Doc. #355.

Plaintiff failed to file a response to this order to show cause. The docket reflects that on March 31, 2016, plaintiff's counsel filed two motions to seal any response to the order to show cause, but the docket does not reflect the filing of any actual response to the order to show cause. See Docs. #356, #357. Rather than file a response to the order to show cause, plaintiff elected to enter into a settlement with the sole remaining defendant (Page), and the case was dismissed on April 8, 2016, with judgment soon entering on April 18, 2016. Docs. #362, #363.

Plaintiff hired new counsel to pursue an appeal. Plaintiff had previously filed premature notices of appeal on December 28, 2015, and January 19, 2016, and the appeal was stayed on plaintiff's motion in the court of appeals and not activated until after final judgment entered on April 8, 2016. Doc. #342.

Plaintiff's appeal attacked the merits of my summary judgment ruling as well as a prior ruling in the case in 2011 by Judge Squatrito. Plaintiff's appeal did not argue that I should have recused myself. Nor did plaintiff seek to stay adjudication of his appeal so that he might pursue a motion to recuse me and for post-judgment relief.

---

discussions that occur during the course of settlement conferences, I am thankful that Judge Margolis exercised sound judgment here to choose to tell me about a concern that could have impacted my ability to serve as the judge in this case.

The Second Circuit rejected all of plaintiff's arguments on appeal. *See* 683 F. App'x 60 (2d Cir. 2017). As to my summary judgment ruling that dismissed plaintiff's claim against Schultz, the Second Circuit ruled in relevant part that "we find no error in the District Court's careful analysis, on summary judgment, of Edelman's equal protection claim," and "[w]e agree with the District Court that these undisputed facts (and Edelman does not dispute them on appeal), combined with the lack of any evidence of material comparators, establish that Edelman's prosecution did not amount to a violation of the Equal Protection Clause." *Id.* at 61–62.

Plaintiff thereafter filed a petition for rehearing en banc, which was denied, and later filed a petition for certiorari. The U.S. Supreme Court denied certiorari on October 2, 2017. *See* 138 S. Ct. 251.

On October 23, 2017, plaintiff filed the instant motion for relief, requesting that I vacate my prior rulings in this case and the entry of judgment and that "this case [be assigned] to a judge other than Judge Meyer because Judge Meyer's impartiality might reasonably be questioned." Doc. #368 at 1. The motion for relief claims several direct and indirect personal connections between plaintiff and me. These connections are set forth in detail in plaintiff's motion, and I will summarize them as follows.

First, plaintiff alleges that his father was my history teacher at the middle school that I attended about 40 years ago in the town of Chappaqua, New York. I do indeed recall being taught by a fine history teacher named "Mr. Edelman" in 7th or 8th grade when I was in middle school in the town of Chappaqua, New York where I grew up.[3] The name "Edelman" is a

---

[3] Plaintiff alleges that his father also taught my two brothers, but did not teach my sister whom plaintiff identifies as someone named "Susan Meyer." Doc. #368 at 4. I do not have a sister named "Susan Meyer" or any sister who is a "respected lawyer[]" as plaintiff claims. *Id.* at 7.

4

common last name, however, and I did not realize at any time while I presided over this case and before I heard from Judge Margolis in March 2016 that there was any connection between plaintiff and "Mr. Edelman" who was my middle school teacher.

Nor do I believe that I reasonably should have been aware of any such connection between someone named "Edelman" who I knew 40 years ago as a 7th or 8th grade student in New York and a younger person named "Edelman" from Windham, Connecticut, who appeared before me as a party while I was a judge in Connecticut. The town of Windham, Connecticut, is in far eastern Connecticut, approximately two hours drive from my original home town of Chappaqua, New York.

Plaintiff next alleges that his father had a relationship with my father in connection with my father's activities as a political candidate and office holder in New York and Connecticut, and he attaches to his motion several decades-old letters apparently written by my father that reference plaintiff's father from 1977 to 1995. These letters appear genuine, but I was not copied on and did not receive or review any of them. My own father's many years of public service in both New York and Connecticut involved relationships and contacts with scores of people that I do not keep track of or know about.[4]

Nor do I recall having any interaction with plaintiff's father since he was my teacher 40 years ago. Although plaintiff claims that "many people" (Doc. #368 at 4) in my hometown of Chappaqua, New York, knew of his father's ownership of a farm in Windham, Connecticut, I do

---

[4] Plaintiff alleges that he "requested help on July 3, 2007 from Connecticut State Senator Ed Meyer in connection with topics pertinent to Edelman v. Page." Doc. #368 at 8. At that time I was working as a law professor, and I have no recollection of being told about this alleged request for assistance from my father.

not recall knowing of any connection between plaintiff's father and anywhere or anyone in Connecticut.[5]

My ruling on summary judgment referred at one point to someone named "Marvin Edelman" as plaintiff's father in the course of describing the facts involved in the case. *See* 2015 WL 1395893, at *3. I did not draw any connection at that time between a person named "Marvin Edelman" and my former middle school history teacher from 40 years before.

Plaintiff further alleges that he spoke and met with me in February 1999 while I was then serving as an Assistant U.S. Attorney in Connecticut. Part of my job as an Assistant U.S. Attorney was to serve as a "duty" attorney to field citizen complaints. Plaintiff claims that at the suggestion of his father he contacted me by telephone and then met with me at the U.S. Attorney's Office to discuss his complaint about the Town of Windham. According to plaintiff, he asked "whether the U.S. Attorney's office could help through 18 USC § 242 or some other means," but that I stated that "the United States Attorney's office usually reserved such efforts for class or group actions." Doc. #368 at 3–4. Plaintiff does not allege any further interaction with me or any further action by me or the U.S. Attorney's Office with respect to his complaint.

I do not recall any telephone conversation or meeting with plaintiff as he describes but I assume for purposes of this ruling that this conversation and meeting did occur. If so, they occurred more than a year before plaintiff filed his federal court complaint in 2000 and more than 15 years before plaintiff's case arrived on my docket in April 2014.

---

[5] One of the letters that is attached to plaintiff's motion is a letter from May 1986 from my father (who was then serving on the New York State Board of Regents) to the commissioner of the Connecticut Department of Education commending plaintiff's father as a "master teacher" and also noting that he has a farm in Windham, Connecticut. Doc. #368 at 18. This letter from more than 30 years ago was not copied to me (I was living in South America at the time), and I have no recollection of ever knowing that my middle school history teacher owned a farm in Windham, Connecticut. Plaintiff also alleges his mother and my grandmother were volunteers at a prison in New York on some unspecified dates, and he also alleges that his brother was an acquaintance of my older brother in high school in the 1970s. I don't recall ever meeting or hearing about plaintiff's mother or brother.

## DISCUSSION

Federal law provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). It further provides that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," or "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. §§ 455(b)(1) & (b)(3).

Rule 60(b)(6) of the Federal Rules of Civil Procedure allows for a court to grant post-judgment relief for extraordinary circumstances, including if there are well-founded grounds for judicial recusal under 28 U.S.C. § 455 that may warrant relief. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988). As the Supreme Court has explained, however, Rule 60(b) relief is "neither categorically available nor categorically unavailable for all § 455(a) violations." *Id.* at 864. Accordingly, for a court to decide at the post-judgment stage if a violation of 28 U.S.C. § 455(a) warrants the grant of a motion for post-judgment relief, "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864.

In light of these legal standards, I will deny plaintiff's motion for several reasons. First, I conclude that plaintiff's motion for relief is untimely. There are obvious reasons why the law requires a party who believes that there is a basis for a judge to recuse himself to act promptly to seek such recusal rather than to string out proceedings and appeals before seeking such relief.

"To ensure that a party does not hedge its bets against the eventual outcome of a proceeding, a party must move for recusal at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for a claim." *United States v. Amico*, 486 F.3d 764, 773 (2d Cir. 2007) (quotation marks and citation omitted). Moreover, "a motion for recusal filed weeks after the conclusion of a trial is presumptively untimely absent a showing of good cause for its tardiness." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986); *see also Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 448 (2d Cir. 2005) (noting "four factors in determining whether a motion for recusal is untimely: (1) whether the party seeking recusal has participated in trial or pre-trial proceedings; (2) whether granting the motion would waste judicial resources; (3) whether judgment preceded the motion; and (4) whether the party seeking recusal can show good cause for delay.").

In view of the elaborate details alleged in plaintiff's motion, it is clear that plaintiff was aware of most or all of his alleged grounds for recusal throughout the time that the case was on my docket beginning in April 2014. But plaintiff failed to call it to the parties' or my attention. Plaintiff has not shown good cause for his delay. Either he did not believe there were valid grounds to question my impartiality or he held back in order to "hedge his bets" just as the Second Circuit has often warned that litigants may not do. *See, e.g., Weisshaus v. Fagan*, 456 F. App'x 32, 34 (2d Cir. 2012); *Amico*, 486 F.3d at 773; *Apple v. Jewish Hosp. & Medical Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987).

Apart from the fact that plaintiff's motion is untimely, I also conclude that plaintiff has intentionally waived his right to seek the relief that he now seeks, because plaintiff failed to respond to my order to show cause in March 2016 that he detail any alleged basis for recusal. Instead of responding and substantiating his claim of a basis for my recusal, he chose to pursue

8

and consummate a settlement with the one remaining defendant in the case (Page) and then an appeal to challenge the merits of my summary judgment ruling as to the other remaining defendant (Schultz). In so doing, plaintiff waived his right to seek relief on grounds that I should have recused myself.

There is no merit to plaintiff's claim that he was somehow legally prevented from earlier raising his recusal claim because of the pendency of his appeal proceedings. He was under a court order to show cause to detail the basis for any recusal but he failed to do so. Moreover, even after the case was reported settled on April 1, 2016, and then judgment entered on April 8, 2016, plaintiff could have sought a stay of the pending appeal in the Second Circuit for me to consider any claim that plaintiff had for my recusal.

Apart from the fact that plaintiff's motion is untimely and waived, I further conclude that plaintiff's claim for recusal lacks merit. Until I heard from Judge Margolis in March 2016, I was unaware of any direct or indirect personal connection between plaintiff and me. Nor do I believe in light of the substantial passage of time and geographical distance that I should reasonably have been aware of this connection such that I should have taken action *sua sponte* to disclose the connection or to recuse myself from this case.

In my view, there was no basis for recusal under 28 U.S.C. § 455. Starting first with the general recusal standard under § 455(a), I do not believe that a reasonable person would have doubted my impartiality in light of the facts I knew or should have known at the time. I did not know or realize any direct or indirect personal connection between me and plaintiff at any time that this case was on my docket until I heard from Judge Margolis in March 2016 at which time I immediately instructed plaintiff to state any basis for recusal (which he failed to do).

For purposes of § 455(b)(1), I did not have "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Plaintiff does not point to any facts suggesting that I would be biased against him, and plaintiff does not point to any disputed evidentiary facts about which he claims I acquired personal knowledge and that were pertinent to any of my rulings in this action.

For purposes of § 455(b)(3) and with respect to my prior employment as a government attorney, my alleged telephone conversation and meeting with plaintiff did not amount to "participat[ion] as counsel, adviser or material witness concerning the proceeding or express[ing] an opinion concerning the merits of the particular case in controversy." If plaintiff's account of his interaction with me in February 1999 is correct, I took no further action with respect to his complaint to the U.S. Attorney's office and I was "courteous but drawn" (Doc. #373 at 4) during our meeting without expressing any opinion about the merits of plaintiff's controversy. Accordingly, plaintiff has not shown that I acted as his counsel or his advisor or as a material witness, much less has plaintiff shown that I expressed any opinion about the merits of his matter.

In addition, this alleged meeting took place in February 1999, more than a year before plaintiff filed his federal court complaint in June 2000 and more than 15 years before his case arrived on my docket in April 2014. *See, e.g.*, *United States v. Lovaglia*, 954 F.2d 811, 816 (2d Cir. 1992) (noting that "it is important that we view [an allegedly disqualifying relationship] in its temporal context" and that recusal was not warranted where, despite past social relations, a judge had no business or social relationship with victim family in past seven or eight years).

Lastly, even assuming that I should have realized that I had a personal connection to plaintiff and should have recused myself, I do not believe that post-judgment relief pursuant to

10

Rule 60(b)(6) would be warranted now in light of the factors set forth by the Supreme Court in *Liljeberg*, 486 U.S. at 864 (noting that court should "consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process"). Here, in large part because of plaintiff's own delay in seeking my recusal, there would be considerable prejudice to defendant Schultz who has obtained a judgment in his favor and successfully defended it on *de novo* review before the Second Circuit. Nor is there any risk of injustice in any other cases or any risk of undermining the public's confidence in the judicial process if plaintiff is not permitted now to rekindle the litigation of this case that has already stretched for nearly 20 years.

## CONCLUSION

Plaintiff's motion for relief (Doc. #368) is denied.

It is so ordered.

Dated at New Haven this 16th day of July 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge